## AMERICAN LINSEED CO. v. HEINS.

(Circuit Court of Appeals, Eighth Circuit. October 17, 1905.)

### No. 2,059.

1. MASTER AND SERVANT—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Defendant maintained in its mill a drum used to operate a cable which passed around it, and which was required by the statutes of the state to be boxed or guarded for the protection of workmen; but it was not so guarded. Plaintiff had worked in the immediate presence of the drum and cable for four years, and knew its location and condition. In passing from one part of the mill to another, instead of passing over a platform which was comparatively safe, he undertook to jump over the drum, when his leg was caught by the cable and crushed against the drum. *Held* that, in view of the fact that the dangerous character of the machinery was so generally recognized as to be made a subject of legislation

and was obvious and well known to plaintiff, he was guilty of contributory negligence in unnecessarily subjecting himself to the danger, and was precluded thereby, as well as by his assumption of the risk by remaining in the employment, from recovering damages for the injury because of defendant's negligence.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, §§ 706–709.]

2. SAME.

A servant who unnecessarily exposed himself to a known and great danger, and was injured, cannot escape the charge of contributory negligence because the unknown negligence of the master made the danger greater than he supposed it to be.

3. SAME—CUSTOM OF NEGLIGENCE.

A servant, who contributes to his own injury by unnecessarily subjecting himself to a known danger, is not relieved from the charge of contributory negligence, nor from its effect, by the fact that it was a custom of other employés to take the same risk.

In Error to the Circuit Court of the United States for the District of Minnesota.

This action was brought to recover damages for personal injuries, and resulted in a verdict in favor of the plaintiff. The facts out of which it arose may be briefly stated as follows: Plaintiff in error, the American Linseed Company, is a corporation owning and operating a mill for the manufacture of linseed oil at St. Paul, Minn. Side tracks are located adjacent to the mill, upon which cars containing grain are switched. In order, however, to place these cars at the precise point where the grain can be conveniently removed by the spouts and elevators of the mill, it is necessary to change their location from time to time. For this purpose a cable is extended from a drum in the mill about pulleys at the entrance of the mill adjoining the tracks, equipped with a hook so as to grapple with the cars. When it is desired to move a car, this hook is connected with the car coupling, and the drum is set in motion by the power used in operating the plant. The drum was about 3½ feet long and 1 foot in diameter, and was so placed that its upper surface was about 2 feet above the floor. Immediately over its center a lever hung down, so that it would hit the head of a person stepping over the drum. The cable in use at the time of the accident was made of wire. It was about three-quarters of an inch in diameter and from 350 to 400 feet long. The wires of which is was composed were a little larger than a pin, and were woven together in strands. Each strand was covered with tarred hemp, and the strands were then twisted so as to form a cable. One of the witnesses, in describing the purpose for which the tarred hemp was used, said: "Having the strands wound with tarred hemp allows friction, prevents the wires from coming together and cutting, and makes a more pliable rope of it. It prevents and secures the cable from injury, and has a tendency to keep the strands consolidated." The cable was purchased of Roebling & Son Company, manufacturers of established reputation, and had been in use at the time of the accident a little more than two months. Previous to the purchase of this cable an ordinary hemp cable had been used. Neither the cable nor the drum had ever been covered by any framework or other protection. The plaintiff had worked for the defendant about four years, and during nearly all that time had been in charge of the cable and drum, and was thus engaged at the time the hemp cable was replaced by the wire cable which was in use at the time of the accident. About three weeks before his injuries occurred his employment had been changed, and consisted at that time in caring for the seed, weighing it, and attending to the cleaners and separators. A Mr. Capen, who had charge of the drum and cable when the accident happened, testified that on two or three occasions, while having hold of the end of the rope in pulling it out to connect with cars, he had noticed that some of the small wires stuck through the tarred hemp and projected from one-quarter to one-half inch. He did not claim

to have examined the general course of the cable, but said that he discovered these projecting wires while having hold of the end of the cable and pulling it out to grapple with the cars. No complaint or report had ever been made to the defendant on this subject. On the morning of the accident the plaintiff was standing on the south side of the mill. The drum was in almost a direct line between himself and a separator which had clogged up and was throwing grain. It was his duty to go to this separator and adjust the machinery so that it would work properly. The clogging was not an uncommon occurrence. It happened whenever a car of dirty seed followed a car of clean seed, because the clean seed fed faster than the dirty, and was remedied by regulating the feed pipe. There was nothing in the situation causing danger either to person or property. The plaintiff might have gone to the separator by passing over a platform. Instead of doing this, however, he attempted to jump over the drum, which was in operation at the time. In comparison with this way the passage over the platform was entirely safe. In attempting to jump over the drum the plaintiff's leg was caught by the rope and drawn about the drum, and so injured as to require amputation at the knee. At the close of all the evidence counsel for the defendant moved the court to direct a verdict in its favor on the following grounds: First, that from the uncontradicted evidence it appeared that the plaintiff was fully advised as to the situation and surroundings of the place at which he had stationed himself at the time he received his injuries; that said plaintiff fully realized and appreciated all the risks and dangers attendant upon being in said place and assumed the same. Second, that from the uncontradicted evidence no wires projected at the point in the cable where plaintiff was caught and, if any wires did so project from the cable, the protruding wires were not the proximate cause of the plaintiff's injuries. Third, that from the uncontradicted evidence it appeared that the injuries so received by the plaintiff were due wholly and solely to the carelessness of the plaintiff in voluntarily and unnecessarily exposing himself to the danger of having his leg caught and crushed on the drum; that where there existed a comparatively safe way and a more dangerous way known to the plaintiff, by means of which he may discharge his duties, and he selects the more dangerous way, as he did in this case, he cannot recover. This motion was denied, and the cause submitted to the jury, who returned a verdict in favor of the plaintiff in the sum of $4,500. The action of the trial judge in denying the motion was duly excepted to, and constitutes the only error assigned here which it will be necessary for us to consider.

James D. Armstrong, for plaintiff in error.

Humphrey Barton, for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge, after stating the facts as above, delivered the opinion of the court.

Upon the entire record we entertain serious doubt as to whether there is any evidence of defendant's negligence which would entitle the plaintiff to recover. The negligence assigned in the complaint is, first, that the defendant failed to cover and protect the drum and cable as required by the factory act of Minnesota, which reads as follows:

"All saws, planers, * * * drums and machinery, including belts, shafting, cables and the fly-wheels of every description * * * in any factory, mill or workshop shall be so located as not to be dangerous to workmen or shall be as far as practicable properly guarded, fenced or otherwise protected."

In view of the fact that the danger from this defect was entirely open and obvious, and that the plaintiff had worked in the immedi-

ate presence of the drum and cable for nearly four years and fully appreciated its dangers, the trial court very properly held, following the decision of this court in St. Louis Cordage Company v. Miller, 126 Fed. 495, 61 C. C. A. 477, 63 L. R. A. 551, that the plaintiff assumed any danger arising from the failure to cover or guard the rope and drum.

The second ground of negligence charged in the complaint is that the cable was a defective appliance because the small wires were suffered to protrude through the tarred hemp with which it was covered, thus rendering it more likely to catch the clothing of employés. As already explained, the witness Capen alone testified on this subject. He stated that he discovered the protruding wires while handling the end of the rope in connecting it with the cars. There was no evidence that this condition existed throughout the entire length of the cable. On the contrary, immediately after the accident the cable was examined by three persons, and all of them testified that they found it in perfect condition and free from protruding wires in any part of it which could have caused the injury. Further, the evidence is very slight and conjectural that protruding wires, if any existed, caused the plaintiff's leg to be drawn over the drum. It is confined to the plaintiff's testimony. We give it in full, as it has a bearing upon other points considered in the opinion:

"After setting the piece of iron pipe against the south wall the machine, separator A, was throwing seed over, and I had to hurry across there, and, while I was going across there, the cable caught my pants leg and pulled my foot in under the drum; that is, in attempting to cross over the drum. The drum was running at the time with this cable. It was a part of my duty to take care of separator A, and to rush over and shut it off when I heard it throwing seed. When my pants caught on the cable, I was on the outside of the cable—that is, on the south side of the cable, near the drum—and, when my pants caught on the cable, I was attempting to jump over the drum. The cable caught my pants and pulled my foot in between the cable and the drum."

It will be noticed that there is no express statement here that plaintiff's pants were caught by protruding wires, but it is argued by counsel that because such wires would make the cable more likely to catch the clothing of employés, and because plaintiff's evidence is open to the construction that the wires caught his clothing, therefore it was a question for the jury to determine whether the injury was in fact caused by the wires. That, however, is largely to substitute conjecture for proof. It is a matter of common knowledge that revolving drums and pulleys catch and draw in the arms and legs of employés. It is because of that danger that such statutes as the one above quoted from Minnesota have been adopted in nearly all the states. The plaintiff's trousers were not produced at the trial, and there was no testimony that they furnished any evidence of having been caught by the protruding wires. We have, then, a case in which the cable itself would have been an entirely adequate cause for the injury, and the only evidence that the protruding wires were a factor in the result is that they would have made the cable still more dangerous. Under all these circumstances the inference that plaintiff's injuries were caused by pro-

truding wires on the cable seems to us a matter of pure conjecture, and insufficient to support a verdict.

We prefer, however, to place our decision upon a ground which is entirely free from doubt, namely, plaintiff's contributory negligence. There was no necessity justifying his conduct in attempting to pass over the revolving drum. He could have reached the place to which he desired to go by means of a platform, which, at least in comparison with the way that he did adopt, was entirely safe. His failure to choose the safe way was, under the decisions of this court, negligence. Morris v. D. S. S. & A. R. Co., 108 Fed. 747, 47 C. C. A. 661. It is not, however, necessary to deduce his negligence by a comparison of methods. The act which he attempted was inherently reckless. Because the cable and drum, when prudently used, were dangerous instruments, the statute of Minnesota required them to be covered. The defendant would have been liable in damages to any employé who was injured by their uncovered condition, provided he had not assumed the risk of such defect. But to hold the defendant guilty of negligence because of its failure to protect the cable and drum by a proper guard, and at the same time hold the plaintiff free from contributory negligence in attempting to jump over the drum while in motion, with full knowledge of the danger of his act, would be to apply an entirely different standard of care to the defendant from that which is applied to the conduct of the plaintiff. We cannot exonerate the plaintiff from negligence without holding that the act which he was attempting at the time he was injured was such as an employé might reasonably and properly perform. This the statute of Minnesota, and the great body of similar statutes to be found in nearly all the states, as well as common experience of the dangers of revolving pulleys and drums, forbid us to do. It was urged upon the trial that the plaintiff was ignorant of the protruding wires, and therefore could not be held to have assumed the risk of injury by their presence, or to have been guilty of contributory negligence in going over the drum, provided his injury was caused by the protruding wires and would not have happened if they had not been present. This contention was completely answered in the case of Gilbert v. Burlington, C. R. & N. Railway Co., 128 Fed. 529, 535, 63 C. C. A. 27. There the plaintiff was injured by an unblocked frog, while walking between two moving cars for the purpose of loosening their coupling. Mr. Barton, representing the plaintiff, made the same argument there which he now makes in behalf of the plaintiff here, and was answered by the court, speaking through Judge Sanborn, as follows:

"Counsel next say that, even if the plaintiff failed to exercise reasonable care to protect himself against the ordinary dangers of walking along the track between the cars and uncoupling them, he did not fail, in the exercise of ordinary care, to protect himself against the particular danger from the unblocked guard rail, because he was ignorant of its condition, and could not have been negligent about it. * * * While it is true in cases of little danger, when the negligence of the plaintiff is remote, and does not clearly contribute to his injury, * * * that a servant may not be guilty of contributory negligence in exposing himself to a risk of which he is ignorant, and of which an ordinarily prudent person would not have been aware, although he fails to exercise ordinary care to protect himself against known dangers,

that rule is not of universal application. It is not applicable to cases in which the danger is known and great, and the negligence of the servant is clearly and directly contributory to the injury. An employé rides upon the pilot of an engine when there are cars on which he could ride with safety. He is injured through the negligence of the master, of the effects of which he was ignorant, when he would have suffered no harm if either he or the master had not been guilty of want of ordinary care. He cannot recover, because his negligence contributes to the injury which the unknown negligence of the master concurred to cause. A pedestrian is about to cross a railroad. It is his duty to stop and look and listen before he crosses. It is the duty of the railroad company to ring a bell or sound a whistle to warn him of approaching trains. A train comes without whistle or bell, and gives no warning of its approach. The footman walks onto the railroad without stopping or looking along the track to the right or the left, and he is injured. He cannot recover, although he had no knowledge that the train carried no bell or whistle, and that no signal would be given, because his negligence contributed to the injury. A brakeman carelessly jumps onto the brakebeam of a moving car and seizes a handhold not placed upon it to sustain a strain of that character, when there are other handholds for the purpose of enabling men to climb upon the cars, which he ought to have used. He is ignorant that, through the negligence of the master, one of the screws which keeps the handhold he seizes in place does not secure it. He pulls out the screw, falls, and is injured. He cannot recover, because his negligence directly contributes to his injury. Indeed, where the plaintiff knows he is exposing himself to great danger, and his negligence directly contributes to his injury, it is not his want of care with reference to the particular negligence or defect that concurs to injure him, but his general breach of duty toward his master, his failure to exercise due care in view of the knowledge which he has, that is fatal to his recovery. When he knowingly departs from the line of duty, and unnecessarily causes his own injury by putting himself in a place which he knows to be dangerous, it is no excuse for his breach of duty that the place was more dangerous than he supposed it to be, or that he did not know the exact degree of the danger he carelessly incurred. One who voluntarily and unnecessarily exposes himself to a known and great danger, and thereby directly contributes to his injury, cannot escape the fatal effect of his contributory negligence because the negligence of the defendant which concurred to produce the injury, and of which he was ignorant, made the danger greater than he supposed it to be."

The only answer to this sound and clear exposition of the law which the plaintiff offers is this: He says that he was not negligent in attempting to jump over the drum while in motion, because other employés had been accustomed for a long time to do the same thing. This argument, however, is fully met in the same case from which we have just quoted:

"Counsel * * * call attention to the testimony of several witnesses to the effect that it was the custom or habit of the servants of the company to ignore the lever on the opposite side of the train, and to step in between the cars, when they were moving, and uncouple them with their hands, when the lever on their side of the train would not produce this effect, and they insist that it was not negligence for the plaintiff to follow the ordinary course pursued by his associate operators in cases of this character. But, 'if a man exposes himself to a risk unnecessarily, he is guilty of negligence, although it be shown that other persons have done the same thing and escaped unhurt. The inherent quality of an act is not changed, whether done by one or many.' Dawson v. Chicago, R. I. & P. R. Co., 114 Fed. 870, 882, 52 C. C. A. 286, 288. The danger of entering and walking between the moving cars was so imminent and obvious that no custom to do so unnecessarily could deprive the act of its inherently negligent character."

The same is true of the plaintiff's act in this case. The attempt to jump over the revolving drum, about which a cable is winding, is an

act so obviously negligent that its quality cannot be changed by the fact that others have done it and escaped unharmed.

The trial court ought to have granted the defendant's motion to direct a verdict in its favor. The judgment will therefore be reversed, with direction to grant a new trial.