CLARA McGINNIS, Respondent, v. R. M. RIGBY PRINTING COMPANY, Appellant.

Kansas City Court of Appeals, December 3, 1906.

1. MASTER AND SERVANT: Factory: Unguarded Shafting; Evidence: Statute. A shaft mentioned in the evidence is held within the purview of section 6433, Revised Statutes 1899, and it is further held that it could be safely guarded.

2. ———: ———: Shafting: Evidence. Held, the evidence tends to show the position of the shafting to have been dangerous to the employees while in the proper discharge of their duties and supports the finding of the jury to that effect.

3. ———: ———: ———: ———: Contributory Negligence. On a review of the evidence it is held that the question of contributory negligence was for the jury since plaintiff was not required to act with the precision of an automaton but merely as a human being with reasonable care.

4. ———: ———: ———: ———: Assumption of Risk: Statute. Held, the doctrine of the assumption of risk which is based on an implied contract has nothing to do with the case since it would do away with the statute.

5. ———: Personal Injury: Superinduced Typhoid Fever: Evidence: 'Damages. At the trial the defendant objected to evidence tending to show that the injury superinduced typhoid feder, which was sustained. Thereafter defendant attempted to show that typhoid fever was of slow development and that the seeds of the disease were lurking in plaintiff and caused her weakness at the time of her injury and said injury was the result of her condition. Plaintiff rebutted such evidence showing that the typhoid fever was the result of the injury. Held, defendant's position was contradictory and as it was not competent for the plaintiff to recover special damages on the typhoid fever and no defense was predicated upon the defendant's theory of the producing cause of the injury the evidence might have been excluded as without the pleadings.

6. WITNESSES: Credibility of: Contradictory Statements: Instruction. An instruction telling the jury that statements by plaintiff against his interest must be taken as true is held error; such statements, however, are always admissible and tend strongly to establish the fact to which the statements refer but they are not conclusive evidence of such fact.

7. **EVIDENCE: Factory Inspection.** The mere fact that a factory has been inspected is of no significance whatever unless it is proposed to further show in some way some fact of material importance.

8. ———: **Factories: Guarding Belting: Expert.** The evidence of an expert millwright that a shaft in a factory could be practically encased is competent; such inquiry does not involve an unmixed question of science and skill.

9. ———: **Invited Error: Enlarging Issues.** Although evidence may enlarge the issues raised by the pleadings yet the appellant who has invited such evidence cannot complain.

10. **TRIAL PRACTICE: Misconduct of Counsel: Offering Evidence.** Where it requires an argument or suggestion of counsel to enable the judge to decide the competency of evidence, the mere fact of offering such evidence cannot amount to misconduct on the part of the counsel offering it.

11. **EVIDENCE: Dangerous Shafting: Similar Accidents: When Admissible.** Although isolated instances of neglect are not competent proof yet where such instances go to show the existence of a condition they are competent.

Appeal from Jackson Circuit Court.—*Hon. T. J. See-horn,* Special Judge.

AFFIRMED.

*Halbert McCluer* and *Omar E. Robinson* for appellant.

(1) The court erred in refusing the instructions in the nature of a demurrer to the evidence, offered at the close of plaintiff's case and again at the close of all the evidence. (2) The court erred in giving instructions one and two, and each of them asked by the plaintiff. Thompson v. Railroad, 111 Mo. App. 465. (3) The court erred in refusing to give defendant's refused instructions 1, 2, 3 and 4, and each of them. Cordage Co. v. Miller, 126 Fed. 495; Thompson v. Railroad, 111 Mo. App. 474; Roberts v. Graham, 6 Wall. 578; Hughes v. Telegraph Co., 79 Mo. App. 140; Brown v. Railroad, 99 Mo. App. 381; Lesser v. Railroad, 85 Mo. App. 331; 2

Sutherland on Damages, sec. 418; 8 Am. and Eng. Ency. of Law (2 Ed.), p. 542. (4) The court erred in excluding competent evidence offered by the defendant. That defendant's factory had been inspected by the state factory inspector. (5) The court erred in admitting illegal evidence over the objections of the defendant: Evidence of James Sullivan in relation to boxing shaft; evidence of Dr. Foster in relation to typhoid fever; evidence of Dr. Burnett in relation to typhoid fever. (6) The repeated statements of plaintiff's counsel in the presence of the jury that there had been other similar previous accidents, was error and prejudicial to the rights of the defendant. (7) The verdict is so much against the evidence that it could only have been arrived at by bias and prejudice, and should not be permitted to stand. Empey v. Cable Co., 45 Mo. App. 425; Jackson v. Railroad, 29 Mo. App. 500; Duggan v. Railroad, 46 Mo. App. 268; Jean v. Morrison, 99 Mo. App. 217; Snyder v. Railroad, 85 Mo. App. 498; Garrett v. Greenwell, 92 Mo. 125.

*Boyle, Guthrie & Smith* for respondent.

Filed argument.

BROADDUS, P. J.—The defendant, a corporation, was the owner and operator of a printing establishment in Kansas City, Missouri, and had in its employ a large number of persons including the plaintiff. In conducting its business, it maintained and operated an extensive equipment of machinery, which was driven by electrical power. The petition states: That on the 7th day of May, 1902, plaintiff was employed as a helper in said business in handling and assorting unbound printed books, preparatory for them being bound; that on said day she was put to work at a table assorting unbound books; that beyond said table where she was at work and close thereto, the defendant operated what is called

a transmission shaft whereby power was transmitted from the floor of the building below to the floor above; that the shaft was unguarded and continuously in rapid motion; and that while plaintiff was so engaged her hair came in contact with the shaft when it was immediately caught and wound around it, which resulted in pulling out a quantity of said hair and otherwise injuring her.

The plaintiff's evidence tended to show that she was twenty-five years old; that in the latter part of April, 1902, she applied for a position in defendant's printing office; that she had had little or no experience in the business; that after having been in defendant's employ a week and one-half, she was put to work at the counting table; that she worked a few hours at the table on the 6th of May and resumed her work there on the morning of the next day; that the table was about twenty-four inches wide; that it was her duty to stand facing the table on the side opposite to the shaft, and to count the books and place them in piles of forty each; and that at the time her hair was caught by the shaft she was standing at the table. But her exact position did not appear in the testimony in her behalf. However, taking into consideration that fact that the table at which she was standing was between plaintiff and the shaft she must have been leaning over the table at the time in order for the revolving shaft to have caught her hair. There was evidence that the shaft situated as it was, was dangerous as to persons working around it, and that it admitted of guards being placed around it without interfering with its free operation.

The defense was a general denial, assumption of the risk and contributory negligence upon the part of plaintiff. Defendant's evidence tended to show that when plaintiff applied for work she informed defendant's foreman that she was an experienced hand at the business; that plaintiff was directed to stand facing the

table while at work, in which position she would be about three feet from the shaft; that during the morning of the day on which she was injured, she was seen sitting on the table reclining on her elbow; that sitting thus her head and shoulders would be towards the shaft — not more than a foot or so from it; that she was sitting on the table at the time her hair caught on the shaft; that she was leaning on one arm; that one of the books had fallen from the table and she leaned over to get it, at which time her hair was caught by the shaft. Other testimony will be noticed. in the progress of the opinion. The defendant at close of plaintiff's case offered a demurrer to the evidence and at the close of all the evidence asked an instruction directing the jury to find for the defendant, both of which the court refused to give.

The action is based upon section 6433, Revised Statutes 1899, which reads as follows: "The belting, shafting, gearing and drums, in all manufacturing, mechanical and other establishments in this State, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishment." There can be no dispute but what the shafting was dangerous as it was situated, and it is equally clear that it could have been safely guarded so as not to interfere with its free operation, and besides the jury has so found.

Defendant claims that the court should have given the peremptory instruction to find for defendant on the ground that the evidence shows conclusively that if plaintiff had been at her place of duty performing her services in the usual and proper manner, she could not have been injured; and that the testimony showed that the shaft in question was not situated in such a position as to be dangerous to employees while in the proper dis-

charge of their duties. As to the latter part of defendant's contention, it is sufficient to say that the matter was submitted to the jury and that there was ample evidence to support the finding.

The other proposition is the assertion that plaintiff was guilty of contributory negligence. A more detailed statement of the evidence shows that the business of counting and piling the books was one requiring great haste in order to keep ahead of the stitcher, and that in her effort to do so we must necessarily conclude that at times, in order to gather them up for counting and for piling them, she would have to lean over the table. Having in view the fact that the table was only two feet in width and that when standing erect she would only be a little over that distance from the shaft, we can readily see how her hair might have been caught by the revolving shaft while she was in a position leaning over the table with all her mind directed to the performance of her work. And the revolving shaft, shown to have been gummy at the time, was well calculated to attract and hold locks of loose or floating hair common with women while employed at work. We do not think under the circumstances that, as a matter of law, plaintiff is to be charged with such contributory negligence as would preclude her right to recover. The defendant's contention would in effect have required plaintiff to stand erect in one place without making allowance for any change of position, or any circumstance that might ordinarily arise that would require the employee to lean over the table in the performance of the work. That is to say the plaintiff's duty was to have acted with the precision of an automaton. She was only required to act as a human being with reasonable care.

We do not believe that the doctrine of the assumption of risk has any application to this case. The doctrine of assumption of risk is based upon implied con-

tract. In order to apply that theory to the case in hand, it would amount to a holding that as plaintiff knew the shaft was unguarded, by reason of her employment, she assumed all risk of danger therefrom. That is to say, notwithstanding the law required the shaft to be guarded and made it unlawful for defendant not to have it so guarded and imposed a penalty for failure to do so, it was competent for plaintiff by contract to waive such provision and assume the risk. Under section 6450, Revised Statutes 1899, the defendant and any of its employees who violated said section 6433, were guilty of a misdemeanor, and subject to a penalty by fine of not less than twenty-five dollars nor more than two hundred dollars for the first offense, and for each subsequent offense not less than one hundred dollars nor more than five hundred dollars, and committal to the county jail until such fine and costs are fully paid. The effect of the argument is to do away with the statute under the plea of assumption of the risk. The St. Louis Court of Appeals and this court have decided otherwise. [Obermeyer v. Logeman Chair Co., 120 Mo. App. 59, 96 S. W. 673; Nairn v. National Biscuit Co., 120 Mo. App. 144, 96 S. W. 679; Bair v. Heibel, 103 Mo. App. 621.] And such is the ruling in effect of the Supreme Court in Lore v. American Mfg. Co., 160 Mo. 608.

What we have said disposes of all questions raised by defendant as to the propriety of the action of the court in giving plaintiff's instruction and the refusal of one and two asked by defendant.

Defendant asked the court to instruct the jury that plaintiff was not entitled to recover for any injuries that she may have sustained, if any, on account of having typhoid fever, which the court refused. There was an attempt made by plaintiff to show that in the month of July following the date of her injury she had the typhoid fever, which was attributable to her injury.

Upon objection of defendant, the evidence was excluded. The defendant, it seems, was not content with excluding such evidence, but voluntarily went into an investigation of the matter and attempted to show theoretically that typhoid fever was developed slowly, that in all probability the seed of the disease was lurking in plaintiff's blood, causing weakness in her condition at the time of the injury, and that her injury was the result of working in such a condition. The plaintiff, in order to meet the issue thus raised by defendant, introduced evidence tending to rebut defendant's theory and to establish the contrary theory, that the typhoid fever was the result of the injury. Judging by a review of the testimony, the contest was waged with unusual vigor. Neither side introduced evidence conclusive of the question. We think, however, it was overwhelmingly shown that plaintiff at the time she received the injury was a strong and healthy young woman, and that there were no indications of typhoid fever in her system. And the expert testimony tended to show that her injuries rendered her more susceptible to disease than should have been the case otherwise. The position of the defendant on the question is somewhat contradictory. After interjecting into the case its theory that the injury was the result of typhoid fever and this theory having been rebutted and overturned, as it were, defendant asked the court to exclude the matter from the consideration of the jury. It was not competent under the petition for plaintiff to give in evidence special damages on account of typhoid fever and, as no defense was predicated upon the said theory of defendant of fever as the producing cause of plaintiff's injury, all the evidence upon the issue thus raised outside of the pleadings might with propriety have been excluded. [Ziekel v. Douglass, 88 Mo. 382; Madison v. Railroad, 60 Mo. App. 608; Strother v. De-Witt, 98 Mo. App. 293.]

The court also refused the following instruction

asked by defendant: "The plaintiff was a witness in her own behalf, the jury are the sole judges of her credibility. All statements made by her, if any, which are against her own interest, must be taken as true; but her statements in her own favor are only to be given such credit as the jury, under all the facts and circumstances in evidence, deem them entitled to." Instructions of this character are given in both criminal and civil cases, but the one mentioned is a departure in some respects from those usually given. A similar instruction was before the Supreme Court, wherein the jury were told that any statements made by the plaintiff, either during the trial or elsewhere, which were against him, were to be taken and treated by them as "absolutely true." The court held that, "While statements against interest as to any particular fact are always admissible and tend strongly to establish the fact to which the statement referred, yet it falls far short of furnishing conclusive evidence of the fact, concerning which the statement is made, and a jury should not be directed in such strong terms to treat such statements as absolutely true." [Sheperd v. Transit Co., 189 Mo. 362; Bond v. Railroad, 110 Mo. App. 131.] The instruction here, although it does not use the words "absolutely true," used the words *must be taken as true*, which are equally as strong.

R. M. Rigby was asked by defendant's counsel if his plant had ever been inspected by the state factory inspector. He answered, "Yes, sir." Upon objection of plaintiff, the evidence elicited was excluded. We think there was no error in the action of the court in that respect. We cannot see what relevancy the question had to the issue. If the inspector had made such inspection, his testimony would have been competent as that of any other witness who may have had personal knowledge of the condition of the plant. The mere fact that an inspection had been made by that official was of no

significance whatever, unless it was proposed to further show by his evidence in some way some fact of material importance.   [Parker v. Holland, 115 Mo. App. 681 and cases cited.]

The plaintiff, over defendant's objection, gave in the evidence of an experienced millwright that it was practical to encase the shaft in question.   The principle involved in this sort of evidence was before this court in Standley v. Railway, 121 Mo. App. 537, where it was held that such evidence was competent.   It is held that, "The inquiry does not involve any unmixed question of science and skill, but was one on which the judgments of ordinary persons having sufficient opportunity for personal observation, and giving in their testimony the facts of their observations, might be properly received, for such comparison and weight as the jury might see fit to give them."   [McPherson v. Railway, 97 Mo. 253; Haymaker v. Adams & Sons, 61 Mo. App. 585; Eyerman v. Sheehan, 52 Mo. 223; Boettger v. Scherpe, etc., Co., 124 Mo. 87; Stafford v. Adams, 113 Mo. App. 717.]

Dr. Burnett and Dr. Forster testified that plaintiff's injuries would tend to produce a general nervous depression of the plaintiff which would lessen the power of her resistance to an attack of typhoid fever.   This evidence was objected to on the ground that it would enlarge the issues raised by the pleadings.   But, as has already been said, as the defendant invited the issue thus raised, he is not in a condition to justly complain.   Other questions have been examined in regard to the wrongful admission of evidence, but we do not find them important.

The following occurred when plaintiff's counsel opened the case before the jury.   He stated, among other things:   "It will be contended upon the part of the defendant that this shaft was in behind that table, and between the table and the elevator, and the elevator shaft, or boxing around the elevator shaft rather, so that it was protected from anybody getting in contact with

it, and that that was a guard, and that there was no reason to suppose that anybody was likely to get their hair caught in that shaft. The evidence will disclose to you that another girl, working in substantially the same position, was caught some time before." Here the defendant's counsel objected to that part of the statement and the court ruled that, "It would not be proper." Plaintiff's counsel then said, "I propose to offer to show it, if Your Honor please, as evidence, not of danger, but of notice of that danger, in leaving that shaft unguarded at that place. Your Honor, I presume will rule upon it at the time, and that by reason of what they knew of it, what had happened before—." At this point, defendant's counsel asked, "What was the ruling of the Court?" The Court said, "I don't think it competent." During the introduction of evidence, plaintiff's counsel asked Kate Sheehan, who was a witness, as follows, "I will ask you to state whether or not while you were sitting at your stool or chair at the place or about the place indicated opposite the stitcher, your regular place for work, your hair was caught in that revolving shaft while working there in April, 1901." Defendant objected and the court sustained the objection. Whereupon, the court had the jury to retire from the court room. During their absence, counsel discussed the law of the question. When the jury returned into court, plaintiff's counsel said, "We offer to show by this witness, in addition to and in connection with other proof, that the conditions of arrangement of the stitcher and tables, shafting and belts had not changed in the meanwhile, that while she was sitting at the stool of the stitcher, which is the place regularly provided for her work, and leaning forward across the stitcher and counting tables in April, 1901, and when leaving her seat on the stool, her hair was caught in the same shaft, and that the foreman of the factory on that floor, Mr. Haase, knew of the fact of such occurrence happening to her,

and this evidence is offered solely for the purpose of proving that the location of the shaft was such as to be dangerous to employees in the factory in the performance of their ordinary duties, and for the further purpose of showing notice of such danger to the defendant." Upon the objection of defendant's counsel, the court refused to permit the proposed evidence to go to the jury.

We have stated the matter quite at length, as defendant with much persistence has urged that the conduct of plaintiff's counsel was altogether wrong and greatly to its prejudice. We are of the opinion that the conduct of plaintiff's counsel was not in any sense reprehensible and that he was evidently acting for what he conceived to be in the interest of his client. And this is so notwithstanding it may be assumed that the evidence he offered to introduce was not competent for the purpose for which it was intended. There have been instances where attorneys in their zeal for their clients have made statements and offered to substantiate them on the trial, the incompetency and irrelevancy of which would be conceded by all lawyers. In such cases where the reasonable effect of such a course would be to prejudice the jury against the other litigant, the appellate courts interfere to prevent injustice. But we know of no case where the evidence sought to be introduced was of such a character as to require light from the arguments and suggestions of the counsel in the case to enable the judge to decide its competency, that the mere fact that it was so offered would amount to misbehavior on the part of the party offering it. It is for the court to say what is and what is not evidence.

But was the evidence incompetent for any purpose? We think not. One of the questions to be determined by the jury was whether the shaft in its unguarded condition was unsafe and dangerous. Evidence of a similar character was admitted in Rogers v. Printing Co., 103

Mo. App. 683; Franklin v. Railway, 97 Mo. App. 473; Golden v. City of Clinton, 54 Mo. App. 100; District of Columbia v. Armes, 107 U. S. 527; Chicago v. Powers, 42 Ill. 169. The rule established by the authorities cited is, that although isolated instances of negligence are not competent proof, yet where such instances go to show the existence of a condition, they are competent. In this case, it went to show the dangerous character of the unguarded shaft.

We have noticed all the material objections raised by the defendant and find no material error. The cause is affirmed as the verdict of the jury was well supported by the evidence. All concur.