## UNION PAC. R. CO. v. BRADY.

(Circuit Court of Appeals, Eighth Circuit. April 23, 1908.)

### No. 2,635.

1. MASTER AND SERVANT—INJURIES TO SERVANT—DEFECTIVE APPLIANCES—RAILROAD COUPLERS—EVIDENCE.

In an action for injuries to the foreman of a switching crew by his hand being crushed between the parts of an automatic coupler, evidence *held* insufficient to show that the coupler was defective.

[Ed. Note.—Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

2. SAME—DUTY OF SERVANT—NONPERFORMANCE—EXCUSE.

Where plaintiff, the foreman of a switching crew, discovered that the automatic couplers on the ends of two cars sought to be coupled would not work by means of the lever on the side of one of the cars, it was plaintiff's duty to cross over and use the lever on the other car to operate the coupler, instead of attempting to do so by hand, and it was no excuse for his failure so to do that it was dangerous to cross between the cars to the other side of the track; the cars being stationary and the switch engine attached to those which were to be moved up to make the coupling being subject to his orders.

3. SAME—FELLOW SERVANTS.

The act of a member of a railroad switching crew in giving a signal to the engineer to push a coal car forward while plaintiff, the foreman of the crew, was in a place of danger between the cars endeavoring to ad-

just the automatic coupler, was negligence of plaintiff's fellow servant, for which no recovery could be had under the laws of Wyoming.

[Ed. Note.—For cases in point, see Cent. Dig. vol 34, Master and Servant, §§ 493–514.]

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

R. W. Blair and F. L. Schofield (N. H. Loomis and H. A. Scandrett, on the brief), for plaintiff in error.

H. J. West and Thomas F. Gatts (T. M. Bresnehen, on the brief), for defendant in error.

Before HOOK, Circuit Judge, and CARLAND, District Judge.

HOOK, Circuit Judge. Thomas J. Brady, who will be referred to as the plaintiff, recovered a judgment against the Union Pacific Railroad Company for personal injuries sustained while in its service at Laramie, Wyo. He was the foreman of a switching crew, consisting of himself, two other switchmen, and an engineer and fireman of a switch engine. A west-bound freight train had come into the yards at Laramie, the engine and caboose were detached, and plaintiff and his crew were engaged in transferring additional cars from another track to that upon which the train lay, preparatory to coupling them to the train and completing it for its westward interstate journey. With the switch engine and an attached caboose they picked up two stock cars from the other track, pulled them to the switch, and kicked them down the track in the direction of the standing train. They then went back and got six or seven coal and flat cars, pulled out again to the switch, and then pushed them in towards the two stock cars, intending to make a coupling and afterwards add them to the train. When the engine with the last lot of cars pulled down to the switch, plaintiff did not follow it; but crossed over the tracks and stood at the end of the stock cars a minute or two, awaiting the approach of the others, so that he could assist in making the coupling. He noticed the knuckle of the automatic coupler on the end of the stock car where he stood was closed, and that the lift lever was on the opposite side of the car, across the track. He did not then attempt to raise the pin and open the knuckle. As the other cars approached, being pushed by the switch engine, a steel coal car was at the fore, and plaintiff noticed that the knuckle of its automatic coupler was open and that the lift lever was on the side of the car nearest to him. It was thought a coupling could be effected without opening the knuckle on the stock car, but when it was attempted the cars did not couple and the stock car bounded away. This was probably because the stock car was on a slight curve in the track and the couplers were not sufficiently in line. When this is the case the better practice is to open both knuckles. Stop and caution signals were then given the engineer, and when the cars came to a standstill there was a space between their ends of 5½ or 6 feet, and the drawbars were 2½ or 3 feet apart. The plaintiff thereupon went between the cars and endeavored to lift the lug pin and open the knuckle of the coupler of the stock car with his hands; but, finding it resisted his efforts, he stepped out, took hold

of the lift lever on the coal car, and, as he says, "jerked it twice, maybe three times," to reopen the knuckle on that car; it having closed in the previous impact. Not succeeding in this, he went between the cars again, and, while attempting to lift the lug pin and open the knuckle on the coal car with his hands, the switch engine pushed the car forward in response to a signal from one of plaintiff's associates, and his right hand and wrist were caught between the couplers and crushed. Shortly afterwards, not exceeding an hour, the coupling appliances on the two cars were examined. Two or three jerks of the lift lever on the stock car raised the pin and opened the knuckle. There was nothing whatever the matter with this appliance, excepting that it was new and worked a little hard. The lever on the coal car operated perfectly with the first effort. The coupling appliances on the two cars were of different makes, but were of standard kinds in general use, and were so constructed as to work together and couple automatically. The one on the stock car was used more generally in the East. The plaintiff at no time tried the lever on the stock car.

Plaintiff's case rests upon a supposed defective condition of the coupling appliance on the coal car amounting to a violation of Act Cong. March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), and upon the sufficiency of his reasons for failing to use the lever of the stock car. The assertion that the coal-car appliance was defective was largely guesswork. It was after dark, and when plaintiff tried the lever on that car he judged by the sound that the chain connecting it with the lug pin was too long. He said: "The lift lever chain seemed too long. It held. * * * I think that the lift lever chain was too long." The chain struck against something, but what it was he could not tell. He "guessed" and "thought" it was the end of the car. It is true he said that after leaving the lever he went between the cars, and just before the accident caught hold of the chain with one hand; but the inspection made shortly afterwards showed the lever operated perfectly at the first trial, and the connection consisted of but a single link such as was commonly used in couplers of that description. To meet this it was suggested that a repair might have been made between the times of injury and inspection, but there was not the slightest proof of one; also that if the single link was there when he was at work it might have been cramped in a horizontal position. This latter, however, was a condition that was not infrequent, and one that ordinarily could be corrected by several sharp jerks of the lever. We are of opinion there was no substantial evidence of a defective condition of this appliance. But, if this were not so, it was plaintiff's duty to use the lever on the other car. He said he considered it dangerous to cross between the cars to the other side of the track, although no engine was connected with the stock car, and the switch engine was subject to his orders and could have been quickly directed to pull the coal car further away. Similar and equally insufficient excuses were given for not adopting other obvious ways to get to the lever on the stock car. In this particular the case falls within the doctrine of Suttle v. Railroad, 75 C. C. A. 470, 144 Fed. 668, American Linseed Co. v. Heins, 72 C. C. A. 533, 141

161 F.—46

Fed. 45, Gilbert v. Railway, 63 C. C. A. 27, 128 Fed. 529, Id. (C. C.) 123 Fed. 832, and Morris v. Railway, 47 C. C. A. 661, 108 Fed. 747.

Plaintiff was 37 years of age, had 12 years' experience as a brakeman, switchman, and yardmaster, and was thoroughly familiar with that branch of railroad service. He admitted it was a very common occurrence for the effective operation of a coupling appliance to require several forcible jerks of the lever—as many as three or four. This is naturally so, and it does not imply a defect in the condition of the mechanism if it is of an approved pattern. Exposure to weather and rust will cause the best of them to work hardly at times, and the connecting link or links will occasionally become cramped. Such things are unavoidable, and it is the duty of him who works with such appliances to give them a fair and reasonable trial before going into a place where life and limb are in jeopardy; otherwise, the well-known tendency, born of familiarity with danger, to do a thing the easier rather than the safer way will frustrate the beneficent purposes of the act of Congress and deprive it of much of its potency.

But one other matter remains: The act of plaintiff's associate in giving the signal to the engineer to push the coal car forward while plaintiff was in a place of danger was the act of a fellow servant, for which no recovery can be had under the Wyoming law. The trial court should have directed a verdict for defendant, as was requested at the conclusion of the evidence.

The judgment is reversed, and the cause remanded for a new trial.