## FEDERAL LEAD CO. v. SWYERS.

### (Circuit Court of Appeals, Eighth Circuit. April 27, 1908.)

### No. 2,679.

1. MASTER AND SERVANT—INJURIES TO SERVANT—ASSUMED RISK.

Plaintiff, when injured, was between 19 and 20 years old, sound in body and mind, and had been in defendant's service for 13 months, performing the same duties, which consisted in part of mounting a platform near the roof of defendant's factory and oiling the boxes of a shaft, soaping a belt running over a pulley, and tending to the machinery operated there. On the shaft two pulleys were keyed, over one of which a sprocket chain was operated, and just beyond the shaft and substantially parallel with it was a cable. Plaintiff, while on the platform attending to his duties of oiling the machinery and soaping the belt, undertook to restore the cable, which had worked off the sheave, and in doing so reached over the shaft. His feet slipped on the platform, and in some way he was caught by the revolving shaft or pulleys and injured. Plaintiff was familiar with the situation, and during his entire employment had been on the platform several times every day. He appreciated the danger of replacing the cable while standing on the platform, and took precautions to prevent falling by reason of the slippery condition of the platform, or being entangled in the shaft or pulleys while reaching over them. *Held*, that plaintiff assumed the risk.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 574–600.

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

2. SAME—STATUTES.

Rev. St. Mo. 1899, §§ 6433, 6434 (Ann. St. 1906, pp. 3217, 3218), requiring dangerous machinery in factories to be guarded, and prohibiting the

employment of minors or women to work between the fixed or traversing part of any machine while in motion by action of mechanical power, does not deprive the master of the defense of assumed risk in an action for injuries to an employé by the master's alleged violation of such sections.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 544-546.]

3. SAME—APPLICATION OF DOCTRINE—COMMON LAW.

Rev. St. Mo. 1899, § 4151 (Ann. St. 1906, p. 2250), declares that the common law of England and all statutes and acts of Parliament made prior to the fourth year of the reign of James I, of a general nature and not local to the kingdom, nor repugnant to or inconsistent with the Constitution of the United States and of the state of Missouri, or the statutes of that state, shall be the rule of action and decision in that state, any law or custom of usage to the contrary notwithstanding. *Held*, that such section was sufficient to make the doctrine of assumed risk in an action against a master for injuries to a servant applicable as a part of the common law of Missouri, though such doctrine first received judicial utterance in 1837, the principle having existed prior to the reign of James I.

4. COURTS—FEDERAL COURTS—RULES OF DECISION—INTERMEDIATE COURTS OF APPEAL.

The decisions of the Missouri Courts of Appeal, while entitled to respectful consideration, are not the decisions of the highest judicial tribunal of the state, which are alone binding on the federal courts in their construction of local statutes.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 950.

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468.]

5. WORDS AND PHRASES—"REQUIRE."

The word "require" means to demand; to ask as of right and by authority; to insist on having; to exact.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 7, pp. 6122, 6125.]

6. MASTER AND SERVANT—INJURIES TO SERVANT—AGE.

Where a servant was between 19 and 20 years old, sound in body and mind, at the time he was injured, and possessed of the knowledge and experience of an adult, he was chargeable with the consequence of such knowledge, and the fact that he was under 21 years of age was not material in determining whether he assumed the risk of the dangers he involuntarily encountered in the operation of defendant's machinery.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 601-609.]

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Robert A. Holland, Jr. (James A. Seddon, on the brief), for plaintiff in error.

Edward A. Rozier (B. H. Boyer, on the brief), for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge. This was an action in the nature of trespass on the case by a servant for damages resulting from negligence of the master. The defenses were the general issue, contributory negligence, and assumption of risk. The verdict and judgment

below, from which the defendant prosecutes error, were in favor of the plaintiff. Ten different specifications of negligence are found in the petition, three of which only require consideration by us. It is charged (1) that defendant failed to exercise reasonable care in providing plaintiff a place to work in and machinery to work with, and thereby violated a primary duty imposed upon the master by the common law; (2) that plaintiff was required to work dangerously near to belting, shafting, gearing, and drums which were not guarded as required by a statute of Missouri; (3) that plaintiff was required to work between the fixed or traversing parts of a machine while in motion, in violation of a statute of Missouri, and that as a result of the foregoing the plaintiff sustained an injury. The statutes just referred to are sections 6433, 6434, Rev. St. Mo. 1899 (Ann. St. 1906, pp. 3217, 3218). They are as follows:

"Sec. 6433. The belting, shafting, gearing and drums, in all manufacturing, mechanical and other establishments in this state, when so placed as to be dangerous to persons employed therein or thereabout while engaged in their ordinary duties, shall be safely and securely guarded when possible; if not possible, then notice of its danger shall be conspicuously posted in such establishments.

"Sec. 6434. No minor or woman shall be required to clean any part of the mill, gearing or machinery in any such establishment in this state, while the same is in motion, or work between the fixed or traversing parts of any machine while it is in motion by the action of steam, water or other mechanical power."

Plaintiff at the time of his injury was between 19 and 20 years old, sound in body and mind, had been in the service of defendant for 13 months before he was injured, and during all that time had been performing the same duties. These duties consisted in part of mounting the platform located near the roof of defendant's factory or mill for the purpose of oiling the boxes of a shaft, soaping a belt running over a pulley located near by, and otherwise attending to the machinery operating there. The platform was 22 feet long and 3 feet wide, without a railing. The power shaft for running the machinery below, consisting of elevators, jigs, and rolls for handling and crushing ores, ran horizontally near to and a little above the platform. On this shaft were keyed two pulleys, about 18 inches apart, over one of which a belt and over the other a sprocket chain operated. Just beyond the shaft, and running substantially parallel with it, a cable used for hauling ores up an incline for treatment in the mill was in operation. This cable occasionally worked off the sheave over which it ran and needed replacement.

The testimony tends strongly to show that the duty of watching the cable and replacing it when necessary devolved upon another person; but there is evidence that plaintiff esteemed it his duty, and had frequently performed it, to reach over the shaft while standing on the platform and, when necessity required it, replace the cable on the sheave. The shaft ran parallel with and about two feet higher than the platform, and it was necessary to reach over it at a point about midway between the pulleys in order to manipulate the cable. On the occasion in question Swyers, while on the platform attending to his duties of oiling the machinery and soaping the belt, under-

took to restore the cable, which had worked off the sheave, to its proper place on the sheave. In doing so he reached over the shaft; his feet slipped on the platform, and in some way he was caught by the revolving shaft or pulleys and injured. There was evidence tending to show that the platform was slippery, the shaft slightly bent, and the boxes through which it passed loose.

The plaintiff, testifying in his own behalf, frankly admitted that he had been familiar for 13 months with the full situation disclosed by the proof as just stated. During all this time he had been on the platform several times a day in the discharge of his duties. He knew well the relative location and physical condition of the platform, shaft, pulleys, and cable, and fully realized each and every peculiarity or defect now claimed by him to have existed. He fully appreciated the danger of replacing the cable on the sheave while standing on the platform, and admitted that he had always been on guard and had taken watchful precautions to prevent falling by reason of the slippery condition of the platform or being entangled in the revolving shaft or pulleys while reaching over them. He testified that the condition of things existing at the time of his injury had prevailed and had been fully known and appreciated by him for a long time theretofore. With these undisputed facts, admitted to be true by plaintiff, there can be no question, under the firmly established doctrine of this court, that he assumed the risk and danger of the injury which befell him, unless the statutes of Missouri released him therefrom. The rule governing this matter has frequently been stated, and recently in the case of Kirkpatrick v. St. Louis & San Francisco Railroad Co. (C. C. A.) 159 Fed. 858, has been restated as follows:

"If the risks and dangers which caused his [the servant's] death were the usual and ordinary risks and dangers of the employment, he assumed them, provided they were known to and appreciated by him. St. Louis Cordage Co. v. Miller, 61 C. C. A. 477, 126 Fed. 495, 511, 63 L. Ed. 551, and cases cited. If, on the other hand, they were not the usual and ordinary risks and dangers, but arose from negligent defects in appliances or a negligent method of operating them required by the master, then he assumed all risks and dangers arising from such defects and such operation, if they were known to him, or if they were plainly observable by him."

The present case in any or all of its aspects falls so well within the doctrine of assumption of risk just stated that, except for the statutes, no claim of defendant's liability is seriously made. This brings us to the only remaining question: Do the statutes cut off the defense of assumption of risk? In St. Louis Cordage Company v. Miller, supra, Glenmont Lumber Co. v. Roy, 61 C. C. A. 506, 126 Fed. 524, Denver & R. G. R. Co. v. Norgate, 72 C. C. A. 365, 141 Fed. 247, 6 L. R. A. (N. S.) 981, and American Linseed Co. v. Heins, 72 C. C. A. 533, 141 Fed. 45, we, after exhaustive consideration, have repeatedly answered this question in the negative. A reference to those cases will disclose that the authorities in this country and England were carefully and critically examined, compared, and considered, and no pains spared in the effort to reach the right conclusion. In such circumstances we deem it unprofitable and unwise to open up

the subject or enter upon a reconsideration of the doctrine there announced, and, notwithstanding the able and insistent argument of learned counsel for plaintiff, must decline to do so; but, as they have invited our attention to certain matters supposed not to have been considered before, we will take them up.

It is said that the defense of assumption of risk rests in a common-law principle expressed by the maxim "volenti non fit injuria," and that this principle first received judicial sanction in England in the case of Priestly v. Fowler, 3 M. & W. 1 (in 1837), and therefore was never adopted in Missouri, where this cause of action arose, and is not now the law in that state. This contention would probably surprise the learned judges of the Supreme Court of Missouri, who have repeatedly recognized and applied that principle in the administration of civil justice in that state. However that may be, the adoption of the common law of England by section 4151, Rev. St. Mo. 1899 (Ann. St. 1906, p. 2250), does not in terms or by necessary implication limit it to such law as might have been judicially declared prior to the fourth year of the reign of James 1. That section is:

"The common law of England and all statutes and acts of Parliament made prior to the fourth year of the reign of James the First, and which are of a general nature, not local to that kingdom, which common law and statutes are not repugnant to or inconsistent with the Constitution of the United States, the Constitution of this state, or the statute laws in force for the time being, shall be the rule of action and decision in this state, any law, custom or usage to the contrary notwithstanding."

Principles of right are never born of a judicial utterance. They exist before the utterance, and the fact of their existence affords the sole ground for their recognition and employment in the administration of remedial justice. Moreover, section 4151 does not purport to fix the time when "the common law," as distinguished from "statutes and acts of Parliament," was required to be known or recognized in England in order to become the rule of action in Missouri.

Our attention is next called to three cases in the Kansas City Court of Appeals (Stafford v. Adams, 113 Mo. App. 717, 88 S. W. 1130; Nairn v. National Biscuit Co., 120 Mo. App. 144, 96 S. W. 679; McGinnis v. Printing Co., 122 Mo. App. 227, 99 S. W. 4) wherein that court decided, in substance, that the defense of assumption of risk was not available to a manufacturing company which, by its failure to conform to the requirements of the factory acts in question, had caused injury and damage to an employé. While those decisions, by reason of the learning and ability of the distinguished judges who pronounced them, are entitled to our respectful consideration, they are not the decisions of the highest judicial tribunal of the state (Const. Mo. art. 6, § 3, and amendment of 1884, § 2) construing local statutes, which alone are binding upon federal courts (Leffingwell v. Warren, 67 U. S. 599, 17 L. Ed. 261; Post v. Supervisors, 105 U. S. 667, 26 L. Ed. 1204, Bucher v. Cheshire Railroad Co., 125 U. S. 555, 8 Sup. Ct. 974, 31 L. Ed. 795), and, inasmuch as we had deliberately placed a different construction upon acts in question before those cases were promulgated, we are not inclined to now recede from it.

We are again asked to say that, even if the defense of assumption of risk may prevail in a case predicated upon a violation of section 6433, requiring the guarding of belting, shafting, gearing, and drums, it cannot prevail in a case predicated upon section 6434, providing that a minor or woman shall not be required to work between the "fixed or traversing parts of a machine." We think it is extremely doubtful if the facts of this case bring it within the contemplation of section 6434. This court took occasion in the recent case of National Candy Company v. Miller, 160 Fed. 56, to comment upon the meaning of that section, and Philips, District Judge, speaking for the court, said:

"Precisely what is meant by the fixed or traversing parts of a machine is difficult to define."

Assuming, however, that it means, as there suggested, "between the fixed and traversing parts of a machine," and that the Legislature meant that minors or women should not be required to work in a place of distraction between the parts of a machine which are fixed and those which are movable with traversing action, we are still in grave doubt whether the work which Swyers was engaged in when injured was of that character. He was quite a distance away from the machines used by defendant for the purpose of crushing and concentrating ores. He was engaged at the top of the building, about the shaft and belt designed to carry the power to the machines. Was this between the fixed and traversing parts of a machine? No evidence was introduced to show how, mechanically speaking, it could be so, and certainly it is not so clear to the judicial mind that we can conclusively take judicial cognizance that it was so. However, let us assume, as counsel have assumed, that it was. The statute in question (section 6434) is not only doubtful, as suggested by Judge Philips, supra, but appears to be so worded as to naturally suggest a certain freedom of action and choice by the servant. It is not in terms a command prohibiting the master from permitting a minor or woman to work between the fixed and traversing parts of a machine. It says:

"No minor or woman shall be required to * * * work between the fixed or traversing parts of a machine."

As commonly understood and employed, the word "require" means "to demand," "to ask as of right and by authority," "to insist on having;" "to exact;" and these meanings have the sanction of lexicographers. See Webster's and Century Dictionaries. If a servant, uncontrolled by any insistence of the master, voluntarily and of his own choice takes work between the parts of a machine in question, as the plaintiff in this case did, it is doubtful if he is required to do so within the meaning of the statute. If the Legislature had intended to absolutely prohibit the doing of such work, and to subject the master to the civil liability attendant thereon, as well as to the fine and imprisonment denounced by section 6450 (Ann. St. 1906, p. 3220) for its violation, it would have been an easy matter to employ appropriate language to clearly express that intent, such as, "No servant shall be permitted, allowed, suffered,"

etc., to do so. These observations are made with the hope that the Supreme Court of Missouri will appreciate the embarrassment evidenced by them and soon place a definitive construction upon the statute in question, and thus make its meaning certain and authoritative. For the purposes of. this case, however, we assume, without deciding, that the work of a minor between the fixed and traversing parts of a machine is prohibited by the statute.

Learned counsel for plaintiff argue that as the basis of the doctrine of the Miller and Norgate Cases is knowledge by the servant that the machine was not guarded as required by the statute, or, in other words, knowledge of some positive observable fact, that doctrine can have no application to this case, in which a minor is involved and in which knowledge of the fact that he is a minor is all that can be imputed to him; and the question is asked: "How can a minor assume the risk of being a minor?" The age, experience, and intelligence of the plaintiff afford a complete demonstration that the mere fact that he had not reached the age of legal majority is of no importance in this case. He had the knowledge, experience, and discretion of an adult, and must be held to their consequences. It is not correct, we think, to say that all that can be imputed to the plaintiff is knowledge of the fact that he was a minor. The record discloses long length of service by him for the defendant in the same position he occupied when injured, perfect familiarity with the condition, defective, dangerous, or otherwise, of the machinery and appliances about which he was working, and an unusually acute appreciation of the risk and danger incident thereto. He knew what he was doing, and where and in what relation to the machines or machinery he was working. No one could have known more accurately about those things than he. His daily experience with the machinery for 13 months at least precludes the legal possibility of any contention that he did not understand its construction or operation, and his own admission estops him from denying that he did not appreciate the danger of working with or near it. If he was required to work between the fixed or traversing parts of a machine, within the meaning of section 6434, he knew it as well if not better than anyone. The doctrine of the Miller and Norgate Cases in our opinion is strictly applicable to a servant seeking to hold the master liable for violating the provisions of this section of the law. By voluntarily accepting and continuing for a year or more in service of the kind assumed to be prohibited, and with the knowledge and appreciation of the risks and danger connected with it as shown by the proof, he assumed the risk of so doing.

The conclusions already announced dispose of this case without the necessity of passing on other questions presented by the assignment of errors.

The judgment below must be reversed, and the cause remanded to the Circuit Court, with direction to grant a new trial; and it is so ordered.