UNITED STATES v. SOUTHERN RY. CO.

(District Court, W. D. North Carolina. May 7, 1909.)

1. RAILROADS (§. 254*)—SAFETY APPLIANCE ACT—CARE OF CARRIER.

The fact that a carrier had used reasonable care or diligence to provide and repair the appliances prescribed by the federal safety appliance act cannot be pleaded as a defense to an action for penalty under the act, because the question of reasonable care or diligence on the part of the carrier does not enter into such a controversy. The duties imposed by the act are absolute, and failure to perform them is a violation of the act.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 254.*

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

2. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—COUPLERS.

The federal safety appliance act requires that each coupler must be operative of its own mechanism, irrespective of the condition of the appliances on other or adjacent cars.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*]

3. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—CONSTRUCTION.

The safety appliance act is remedial in its character, enacted for the better protection of railroad employés and travelers by rail, and it should be construed by the courts, as far as its terms will admit, so as to carry out fully the intention of Congress.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*]

4. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—EMPTY CARS.

An empty car hauled in a train with other cars carrying interstate commerce must be equipped with appliances required by law, and such appliances kept in repair to the same extent as those of a loaded car. It is just as dangerous to couple and uncouple empty cars as loaded cars.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*]

5. RAILROADS (§ 254*)—SAFETY APPLIANCE ACT—ACTION FOR PENALTY.

An action to recover a penalty under the safety appliance act is civil in its nature, and requires the plaintiff, in order to establish the allegations of the complaint, to produce a preponderance of evidence only.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 772; Dec. Dig. § 254.*]

6. RAILROADS (§ 254*)—SAFETY APPLIANCE ACT—EVIDENCE—DEFECTIVE COUPLERS.

The facts in this case, as affected by the foregoing principles of law, discussed and explained.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 254.*]

(Syllabus by the Court.)

Alfred E. Holton, U. S. Atty., Albert L. Coble, Asst. U. S. Atty., and Walter N. Brown, Sp. Asst. U. S. Atty.

Moore & Rollins, for defendant.

BOYD, District Judge (charging jury). This is a civil action, gentlemen of the jury, brought by the United States, as plaintiff, against the Southern Railway Company, as defendant. wherein the plaintiff seeks to recover of the defendant certain penalties alleged

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to be due on the ground that the defendant has violated the provisions of an act of Congress. The act I refer to is a statute passed by the Congress of the United States (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) requiring railroad companies operating interstate lines or engaged in what is commonly called interstate commerce to provide certain equipment for cars used by such railroad companies in their business, such equipment coming under the general head of safety appliances. One of the requirements under the provisions of the statute is that upon each car used in interstate traffic by such railroad companies as come within the scope of the law there shall be provided an automatic coupler; that is, a coupler which is so contrived as to effect a coupling and an uncoupling without requiring the employé of the carrier to go between the cars for that purpose. And a further requirement is that this coupler have attached to it a lever consisting of an iron rod extending out near enough to the end or side of the car that in order to uncouple the cars the employé can take hold of the lever and raise the pin so as to bring about a dissolution of the coupling—that is, a separation of the cars—without going between the cars for that purpose. This act has been made to apply not only to cars, but to locomotive engines and to tenders; in other words, to all carriages, cars, and rolling stock that are used on the railroads upon which a coupler is required in order to attach it to a train or to another car. The courts have construed this act as originally passed and the amendment thereto to apply to all cars and locomotives, tenders, etc., as I have stated.

In addition to the requirement in regard to the coupler, the act says further that:

"From and after the 1st of July, 1895, until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab-irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling cars."

It is therefore a requirement by the terms of the statute that upon the ends and sides of the cars there shall be these grabirons or handholds which you have heard described here, and this requirement is also imperative.

Now, gentlemen, that is the law as the court understands it, so far as it is necessary to explain it to you in this case.

The court charges you that the question of reasonable diligence on the part of the interstate railroad companies or carriers does not enter into this controversy. The law, according to the construction which has been placed upon it by the courts of the land, imposes upon the carrier these duties which are said to be absolute, and this court so interprets this law. The hauling or using, therefore, on the part of a carrier engaged in interstate commerce, of any cars, tenders, locomotives, or other rolling stock used in carrying on interstate commerce, which are not equipped with this coupling I have described, or where this coupling apparatus is in a state of unrepair rendering it inoperative, is a violation of the law. And it is also a violation of the statute to fail to have the handholds or grabirons which have been

described to you upon the ends and sides of the cars, and to maintain them there in proper repair.

Therefore, gentlemen, the question—the first question which you are called upon to determine, and afterwards to apply to each one of the issues which you will take under consideration—is whether these engines with tenders, or either one of them, or whether these cars, described by the witnesses, or either one of them, was in use by the Southern Railway in its business as a carrier of interstate commerce; that is, traffic, articles of freight, or commerce between the states. It is admitted that the defendant, the Southern Railway Company, is an interstate carrier; in other words, that it is a railroad company engaged in operating a system of railways and conducting an interstate business by carrying freight and passengers from one state to another. As the court has said to you, this law makes the duty of this railroad company, the defendant in this case, being an interstate carrier, absolute in respect to the requirements for couplers and handholds before described. As I have said, the fact that the railroad company had used reasonable care or diligence to provide either the couplers or handholds, or to repair either, if such was needed, would not be a defense to this action, provided the car upon which the equipment was required was in use, and the equipment had not been provided, or, having been provided, was out of repair so as to unfit it for its intended use. If a car, a locomotive, or tender in use as before stated fails to have the coupling apparatus not only attached, but in working condition as intended—that is, self-operating and coupling without the necessity of the employé going between the cars for that purpose; if it is not provided with the lever, by the use of which the employé, when it becomes necessary, can uncouple the cars without going between them; if it is without the handholds or grabirons, as before stated—if the railroad company does not have either one of these or all of them on the cars which require them, or if all are out of repair, or either one is out of repair for use as contemplated, and if such car, locomotive, or tender is in use upon the road, either loaded or unloaded, in connection with the operation of an interstate commerce train, such condition constitutes a violation of the law and renders the railroad company liable.

I can possibly be a little more explicit, especially in regard to the coupler. This apparatus must be complete and in working order on each car, to the end that the coupling will be made automatically when the cars are brought together, and the lever must be there and the coupler in condition that the employé may make the uncoupling either from the one car or the other without going between them. In other words, the federal safety appliance act requires that each coupler must be operative of its own mechanism, irrespective of the condition of the appliances on other or adjacent cars. The statute we are considering is remedial in its character, enacted for the better protection of railroad employés and travelers by rail, and it should be construed by the courts, as far as its terms will admit, so as to carry out fully the intention of Congress. If an unloaded car is being used and hauled in a train with other cars carrying interstate commerce, the law says that this car, though empty, comes within the

provisions of the statute and must be equipped and kept in repair in respect to the couplers and the handholds to the same extent as if it contained a load. It is just as dangerous to couple and uncouple empty cars as to handle loaded cars. As I told you a while ago, an essential element of the case, a necessary basis of liability, is that the car or engine or tender must be in use. Of course, if it is standing upon the side track not being used, then, as I said before, there is no violation. Or if it is in the repair shop, carried there for repairs and found in this condition, then the law would not apply.

Now, gentlemen, with these general propositions of law, I instruct you further that this is a civil action, brought to recover a penalty; not an action for damages for an injury which some one has sustained by reason of an alleged defect in the machinery or equipment in use by defendant on its railroad, but a suit brought by the United States against this railroad company to recover a penalty as a punishment for an alleged failure to comply with the provisions of this statute. Although the recovery is a punishment, because it is a penalty which requires the carrier to pay money on account of its failure to comply with the law, and to pay it not to an individual or to a number of individuals, but to the government, yet it is a civil action, and it differs from a criminal action in respect to the quantum of proof required to authorize the jury to return a verdict in favor of the plaintiff. In a criminal action—that is, if this were an indictment—the prosecution would be required by sufficient testimony to convince your minds beyond a reasonable doubt before you would be warranted in returning a verdict of guilty; but such is not the rule in this action. In this case it being, as stated, a civil action, the law says that the plaintiff, to establish the allegations of the complaint, is required to produce a preponderance of evidence; in other words, the burden is on the plaintiff to present to the jury facts and circumstances tending to sustain the contentions which outweigh, when put together, the testimony to the contrary. It is the duty of the jury to consider the testimony pro and con upon each one of the issues, and determine whether the preponderance is in favor of the plaintiff. As illustrating what constitutes the weight of evidence, it may be said that the jury should put the testimony of the plaintiff on the one side of the balance and the testimony of the defendant on the other side, and, in order to authorize the jury to return a verdict for the United States upon any one or more of the issues, the evidence in favor of the issue must outweigh the evidence against it; that is, it must tip the scales.

Then, gentlemen, you take the first issue: "Is the defendant liable to the plaintiff for the penalty as alleged in the first cause of action relative to engine No. 1,650?" The plaintiff's witnesses say substantially, in regard to that, that engine No. 1,650, which they say was in use in the yard of the defendant at Asheville in shifting cars engaged in interstate commerce, was being used by the defendant at this work with the chain on the tender coupler broken, so that the lever would not lift the pin to permit the uncoupling without the presence of some one between the cars. Now that is the contention that the United States makes in regard to that, and that is substantially

what the witnesses for the United States say. On the other hand, as to that issue, the witnesses for the defendant say that engine No. 1,-650 was in the yard, that the tender chain was broken, but that the defendant's employés were in the act of putting it in order when it was discovered by the government witnesses. The testimony for the defendant is further to the effect, as the court recalls it, that the break had only occurred shortly before, and that the engine was not used for any duty in the yard there until it had been repaired and put in proper condition to work as required by the law. The disagreement between these witnesses you are called upon either to reconcile, or decide which you will accept. If, taking into consideration the character of the witnesses, the manner of their statement, and all these things, you are satisfied by the weight of the testimony that the government's contention is right, then you would say in response to the first issue "Yes." But if upon the whole testimony you are not satisfied by this preponderance of testimony—if the prosecution has not given you the weight of testimony—then you will answer that issue "No."

And so, gentlemen, the same principles apply to the second issue: "Is the defendant liable to the plaintiff for the penalty as alleged in the second cause of action relative to engine No. 3,016?" As to that engine the government witnesses say, substantially, that the uncoupling lever was missing from the tender, and that the engine was used in shifting and moving interstate cars. On the other hand, the witnesses for the defendant say that this engine, No. 3,016, was not used at all, was not fired up. Now how is this? That is the question for you to answer. If the government has not satisfied you of the truth of its contention by its evidence, you would not be authorized to answer that issue in the affirmative; or if upon the consideration of all the testimony your mind is in doubt about it, or if the testimony is so that you cannot decide it, evenly balanced, then the government cannot recover, and you should answer the issue in the negative.

The third issue is: "Is the defendant liable to the plaintiff for the penalty as alleged in the third cause of action relative to Southern Railway Company car No. 180,201?" The witnesses for the United States say that that car was defective in that the chain on the coupler was broken and that that car was there in transit—was being used in interstate commerce. And they say further that, the chain being broken, the coupler could not be used as an automatic coupler. If that be true, gentlemen, then the plaintiff is entitled to have you answer the third issue in the affirmative. On the other hand, the witnesses for the defendant say that the coupler was good—would work without going between the cars. Now that is another instance, gentlemen, in which you must decide what the truth of the transaction was. With all the testimony, if the government has given you the weight of the evidence, as I have before indicated, you should find that issue in the affirmative; if not, in the negative.

The fourth issue: "Is the defendant liable to the plaintiff for the penalty as alleged in the fourth cause of action relative to Southern Indiana car No. 1,649?" The witnesses for the government say that car No. 1,649 was a flat car, I believe; said it was moved out on the line; that it was used there in interstate business, and that the grab-

iron was missing on one end of the car. That is what they say. On the other hand, the witnesses for the defendant say that they had inspected car No. 1,649, Southern Indiana car, and that it was in good condition, and that no grabirons were missing. There is another controversy, gentlemen—a contradiction between witnesses—which it is your province exclusively to determine. You will answer that according to the rules of law that I have announced before.

Fifth issue: "Is the defendant liable to the plaintiff for the penalty as alleged in the fifth cause of action relative to Charleston & Western Carolina car No. 5,074?" The witnesses for the United States say that the grabiron was gone on the end of that car, and that it was being used in interstate commerce. On the other hand, the witness for the defendant says he inspected that car No. 5,074 and found no handholds missing. Gentlemen, it is your duty to say how that is.

Now, there is nothing left for me to do, gentlemen, except to instruct you as to the law in regard to contradictory testimony. The law says that in case of conflicting testimony it is the duty of the jury to harmonize it, if possible. But if the testimony is so contradictory, so absolutely antagonistic, that it is incapable of reconciliation, then it is the province of the jury to accept the testimony of such witnesses as they believe and disregard that of those they do not believe. So then, gentlemen, that is about the whole case here. It devolves upon you to say how these matters are. You have heard all of this testimony, and I will not address you further, but you are to determine as to what the real facts are. You take the case, take these issues, consider all the testimony, and in view of the rules of law, as laid down to you by the court, answer them.

Verdict for government on four counts.