### UNITED STATES v. BALTIMORE & O. R. CO.

(District Court, W. D. Pennsylvania. May 17, 1909.)

**1. PENALTIES (§ 33*)—SAFETY APPLIANCE ACT—EVIDENCE.**

An action for penalty under the federal safety appliance act (Act March 2, 1893, c. 196, § 1, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) is a civil case, and the government is only required to prove its case by a preponderance of the evidence and not beyond a reasonable doubt.

[Ed. Note.—For other cases, see Penalties, Cent. Dig. § 34; Dec. Dig. § 33.*]

**2. COMMERCE (§ 27*)—SAFETY APPLIANCE ACT—VIOLATION.**

If a railroad company hauls a car which is defective as to coupling appliances or grabirons or handholds, although the defective car does not contain any interstate traffic, yet if it is hauled in a train which contains another car that is loaded with interstate traffic, then the statute is violated.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 27.*]

**3. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—PROVISIONS.**

The safety appliance act (Act March 2, 1893, c. 196, § 1, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) imposes upon a railroad company an absolute duty to maintain the prescribed coupling appliances, grabirons, and handholds in operative condition, and is not satisfied by the exercise of reasonable care to that end.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 229.*

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

**4.** RAILROADS (§ 229*)—SAFETY APPLIANCE ACTS—COUPLING APPARATUS.

The coupling and uncoupling apparatus on each end of every car must be in an operative condition.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. § 229.*]

**5.** EVIDENCE (§ 586*)—WEIGHT AND SUFFICIENCY—NEGATIVE AND POSITIVE TESTIMONY.

Positive testimony is to be preferred to negative testimony, other things being equal; but where it was the duty of an inspector on the part of the railroad company to inspect cars, and he says that he did inspect the cars that came in and did not see certain defective appliances, that is not such negative testimony that it should not receive the same consideration, other things being equal between the witnesses, as positive testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2432–2435; Dec. Dig. § 586.*]

(Syllabus by the Court.)

John H. Jordan, U. S. Atty., and Ulysses Butler, Sp. Asst. U. S. Atty.

McCleave & Wendt, for defendant.

ORR, District Judge (charging jury). This is an action brought by the United States against the Baltimore & Ohio Railroad Company to recover penalties which the United States says the Baltimore & Ohio Railroad Company should pay by reason of violations by that company of an act of Congress, to which I now call your attention. It is entitled:

"An act to promote the safety of employés and travelers upon railroads, by compelling common carriers engaged in interstate commerce to equip their cars with automatic couplers and continuous brakes and their locomotives with driving-wheel brakes, and for other purposes." Act March 2, 1893, c. 196, § 1, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174).

The fourth section of that act says that:

"From and after the first day of July, eighteen hundred and ninety-five, until otherwise ordered by the Interstate Commerce Commission, it shall be unlawful for any railroad company to use any car in interstate commerce that is not provided with secure grab-irons or handholds in the ends and sides of each car for greater security to men in coupling and uncoupling the cars."

I have referred to that section first, because 10 of the specifications in the complaint in this case relate to the provisions of that section.

Section 2 of the act says that:

"On and after the first day of January, eighteen hundred and ninety-eight, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars."

The first specification in the bill of complaint in this case is based upon that section.

Now, that act was amended in 1896, and section 6 of the act as amended provides that:

"Any such common carrier using any locomotive engine, running any train, or carrying or permitting to be hauled or used on its line any car in violation of any of the provisions of this act shall be liable to a penalty of one

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

hundred dollars for each and every such violation, to be recovered in a suit or suits to be brought by the United States district attorney in the District Court of the United States having jurisdiction in the locality where such violation shall have been committed." Act April 1, 1896, c. 87, § 1, 29 Stat. 85.

The construction placed by the courts upon that act has been somewhat various, and I have given the matter considerable attention. I am of the opinion, and so instruct you, that that act imposes upon a common carrier the absolute and imperative duty of having its cars used in interstate commerce equipped in the manner required by the act.

It has been argued here that the railroad company should not be responsible except for want of ordinary care in keeping its appliances in order, and that it would be a great hardship upon the railroad company to hold otherwise. I say to you that the exercise of reasonable care by the railroad company to keep the cars equipped with the appliances required by the act will not excuse the railroad company from its default.

It has also been argued here on behalf of the railroad company that that company should not be liable to these penalties except it has been willfully negligent. I say to you that the matter of willful negligence does not enter into this case at all, because the law makes it an absolute, imperative duty upon the railroad company to keep its cars so equipped.

In arriving at this construction, it is necessary to consider the conditions that existed at the time and immediately preceding the passage of that act of Congress. We know from our own experience that many and many a time have we been introduced to trainmen and have shaken hands with only part of a hand. We knew that the injuries resulting to trainmen were so great that there was an economic loss to the country by reason of the impairment of these men for doing the full and proper work that they would have been able to do had they perhaps not suffered the injury. It was to remedy those conditions that this act was passed.

There is another phase of the act to which it is perhaps not necessary to call your attention here; that is, that a railway employé does not assume the risks occasioned by continuing in the employ of a railroad company after knowledge of defects on the cars or the failure of the railroad company to keep its cars equipped as provided by the act. This law changed the common law with respect to that.

In arriving at this conclusion, I have considered the question of hardship that has been suggested upon the part of the railroad company. I say to you that there is no more hardship on the part of the railroad company than there is on the part, we will say, of a licensed saloon keeper, who inquires of a minor if he is of full age before he furnishes him with liquor, and is informed that he is of full age; for that licensed saloon keeper, although he was deceived by the man who received the drink, is held under the law to be liable. It was his duty to take care of that. And the question of hardship upon the railroad company, I say, is not a matter to be considered in this case at all, because the act of Congress has specified what the railroad company was to do in order to change the conditions that previously existed, and, whether it is hard upon a railroad company or not, it was within the

province of Congress to so enact, and until Congress changes the law we must hold to its meaning.

Now, in the questions that arise here, you must determine whether or not these cars, if they were used at all by the railroad company, were used in interstate commerce—that is, in commerce between states, rather than in intrastate commerce—in commerce within the state lines. Because, if those cars were used in commerce within the limits of the state lines and not between states, then the act of Congress does not apply.

The first cause of action in the complaint is that a certain car designated by the initials and number N. Y. O. & W. 9570 was used in interstate traffic on the defendant's railroad near Connellsville, and that the uncoupling apparatus on the "A" end of that car was out of repair and inoperative, because of the fact that the chain connecting the lock-pin with the uncoupling lever was broken. You have heard the testimony with respect to the inspection of that car by the railroad inspector in that yard, and you have heard the testimony of the witnesses for the government with respect to the removal of that car from the yard in a direction going east, I believe they said; and you will determine whether or not that car was used in going from Connellsville with that defective coupling apparatus. If you find it was used in interstate commerce with that defective coupling apparatus, then your verdict would be for the plaintiff. If, however, you find that that car was not defective, that the coupling apparatus was not defective, that it had been examined, inspected by the railroad company, and that it was not defective when started on its way east in the train, then your verdict, so far as that cause of action is concerned, should be for the defendant. You have heard the evidence of those witnesses. You are to determine their credibility, and you are to determine from all of the evidence what the facts in the case are.

A point has been put to me that positive testimony, other things being equal, is to be more relied upon than negative testimony, everything being equal between the witnesses. I think I understand what that means, and I will later read the point and have affirmed it. But I want to say this, that what may be negative testimony under one state of facts is not negative under another. As, for instance, a man who might testify that he did not hear a whistle blown or a bell rung is testifying to negative circumstances, and his testimony, perhaps, is not entitled to as much weight as is the testimony of the man who says he heard it. But if it was a man's duty to hear the whistle or to hear the bell, then if he says he did not hear it, while it is negative in its character, yet, because it was his duty—other things, I say, between the witnesses being equal—the testimony would have the same weight as the testimony of the man who said he heard the bell and whistle. And so it is with the testimony in this case. If it was the duty of the inspector on the part of the railroad company to inspect those cars, and he says that he did inspect the cars that came in there and did not see this defective appliance, that is not, to my mind, such negative testimony that it should not receive the same consideration, other things being equal between the witnesses, as positive testimony. I think they

are both positive, because it was the duty of that man to make the inspection.

The remaining causes of action in the specification all arise at New Castle Junction. You have heard the testimony there from the two inspectors who represented the government; and you have heard the testimony of the inspector on the part of the railroad company. The second cause of action charges the use in interstate commerce of a car initialed and numbered B. & O. 57170, when the grabiron or handhold on the "A" end of that car was missing. The third cause of action charges the use of car initialed and numbered B. & O. 57945, when the grabiron or handhold on the right-hand side of the "B" end of the car was missing. The fourth cause of action charges the use by the defendant in traffic of car initialed and numbered B. & O. 56256, when the grabiron or handhold on the right-hand side of the "A" end of the car was missing. The fifth cause of action charges that the defendant used in interstate traffic a car initialed and numbered A. C. L. 16131, when the grabiron or handhold on the right-hand side of the "A" end of the car was missing. The sixth cause of action charges the defendant with the use in interstate traffic of car initialed and numbered B. & O. 52324, when the grabiron or handhold on the right-hand side of the "A" end of the car was missing. The seventh cause of action charges the defendant with using in interstate commerce a car initialed and numbered C. L. & W. 8352, when the grabiron or handhold on the left-hand side of the "A" end of the car was missing. The eighth cause of action charges the defendant with the use in interstate commerce of car initialed and numbered B. & O. 50152, when the grabiron or handhold on the right-hand side of the "A" end of said car was missing. The ninth cause of action charges the defendant with using in interstate commerce a car initialed and numbered B. & O. 56526, when the coupling and uncoupling apparatus on the "A" end of said car was out of repair and inoperative, the lock-link, it being charged, being broken on said end of said car. The tenth cause of action charges the defendant with the use in interstate commerce of a car initialed and numbered B. & O. 53598. when the coupling and uncoupling apparatus on the "B" end of said car was out of repair, the lock-link said to be broken on said end of said car. The eleventh cause of action charges the defendant with having used in interstate commerce a car initialed and numbered B. & O. 29074, when the grabiron or handhold on the side near the "A" end of said car was missing. The twelfth cause of action charges the defendant with having used in interstate commerce a car initialed and numbered B. & O. 57184, when the grabiron or handhold on the right-hand side of the "B" end of said car was missing. The thirteenth and last cause of action charges the defendant with having used in interstate commerce a car initialed and numbered B. & O. 50259, when the grabiron or handhold on the right-hand side of the "A" end and on the right-hand side of the "B" end of said car were missing.

Now, if you should find the facts to be true as alleged in these causes of complaint as I have read them to you, that these cars were used by the defendant in interstate commerce when these grabirons or handholds were missing, or when the link-chain was broken, so that

the coupling could not be uncoupled without getting between the cars, then the plaintiff is entitled to recover for each of these offenses the sum of $100. But if you should find that any one of these cars was not so used by the defendant as charged, then your verdict with respect to such particular car or cars should be for the defendant. It appears to be the uncontradicted evidence in this case that Connellsville and New Castle Junction were points of repair for the Baltimore & Ohio Railroad.

I have been asked to charge you that it was not necessary for the agents or officers of the Interstate Commerce Commission to notify the railroad company of these defects, and I will so charge you that there was no legal liability upon them to do so. But I cannot help but feel that, in view of the purpose for which this act was passed, and in view of the fact that those points were repair points, it was a matter of common ordinary honesty, for the purpose, a matter of common ordinary human obligation, to have informed the railroad company, if they had time to inform them, or to inform the officers in charge of the repairing and inspecting of the cars there, before permitting those cars to go out upon the road as a menace to people who might have to use them, of defects found. I will charge you that there was no legal liability upon them to do so, but I have expressed myself as I have done, because I think that is right.

As I say, you have the evidence before you. You must decide the questions of fact that are presented to you; and if I have said anything to indicate my opinion as to the credibility of witnesses, or as to the facts where they are disputed, you should disregard what I say, because the determination of the facts is wholly for you, in the light of the instructions upon the law which I have given you.

Counsel for plaintiff has asked me to charge you as follows:

First. That this is a civil case, and the government is only required to prove its case by a preponderance of the evidence and not beyond a reasonable doubt. Answer. Affirmed.

Second. That if they should find that the defendant hauled a car which was defective in not complying with the safety appliance law as to coupling appliances or grabirons or handholds, although the defective car does not contain any interstate traffic, yet if it is hauled in a train which contains another car that is loaded with interstate traffic, then the act is violated. Answer. Affirmed.

Third. That the safety appliance law imposes upon a railway company an absolute duty to maintain the prescribed coupling appliances and grabirons and handholds in an operative condition, and is not satisfied by the exercise of reasonable care to that end. Answer. Affirmed.

Fourth. That the inspectors in the employ of the Interstate Commerce Commission are not required to inform the employés of the defendant, when they make the inspection of the cars sued upon, of the defects found in the appliances. Answer. Affirmed.

Fifth. That the coupling and uncoupling apparatus on each end of every car must be in an operative condition. Answer. Affirmed.

Sixth. That positive testimony is to be preferred to negative testimony, other things being equal; that is to say, when a credible witness

testifies to having observed a fact at a particular time and place, and another equally credible witness testifies to having failed to observe the same fact, with the same or equal opportunity to so observe such fact, the positive declaration is to be preferred to the negative, in the absence of other testimony corroborating the one or the other. Answer. Affirmed.

Defendant's counsel has requested me to instruct you as follows:

(1) That this action, being for the infliction of a penalty upon the defendant for the violation of the act of Congress commonly known as the "Safety Appliance Act," is criminal in its nature, and, if the several cars mentioned in the several causes of action set forth in the plaintiff's statement were equipped with the several safety appliances required by the safety appliance act aforesaid, and reasonable care used by the defendant to keep and maintain such appliances in good order, so as to keep them available for the purposes for which they were intended, the defendant has complied with the duty imposed upon it by the safety appliance act, and plaintiff cannot recover. In this case the plaintiff has not shown that the several defects in the safety appliances mentioned in plaintiff's statement existed at the time same were discovered as alleged, by reason of want of reasonable care by defendant in the repair thereof, and the verdict must be for the defendant. Answer. Reasonable care to maintain the appliances contemplated by the act of Congress will not relieve the defendant from liability if the jury find as a fact that defendant used in interstate commerce any one or more of the several cars without such appliance. The point is refused.

(2) This action being to recover a penalty for an offense criminal in its nature, if the cars mentioned in the plaintiff's statement had been equipped with the couplers and handholds as required by the act of Congress known as the "Safety Appliance Act," and even if at the time of the inspection thereof by the government inspectors a coupler should be found in a defective condition or a grabiron or handhold torn off or in a defective condition, yet the burden of proof is upon the plaintiff to show that such defective conditions were the result of a willful neglect on the part of the defendant company to inspect and repair such safety appliances so as to make them available for use, and there is in this case no evidence offered by the plaintiff sufficient to convict the defendant of willful neglect or gross negligence equivalent thereto to repair and maintain said appliances in good order and available for use, and the plaintiff is not entitled to recover the penalty imposed by the said act of Congress known as the "Safety Appliance Act," and the verdict should be for the defendant. Answer. The point is refused.

(3) There is not sufficient evidence to justify a verdict against defendant upon the first cause of action set forth in the plaintiff's statement, and the verdict thereon must be for the defendant. Answer. That point is refused.

A similar point has been put with respect to each of the other causes of action, and I have refused them all just as I have the one last read.

Now, gentlemen, you will take the case and consider the evidence, and, in the light of such instructions as I have given you, render your verdict according to the facts as you may determine them.

Verdict for government on all counts.